## Cronly *vs.* Bank of Kentucky.

APPEAL FROM FRANKLIN CIRCUIT.

Case 46.

ORD. PET.

Cronly and McMurtry were partners in business; during the existence of the partnership Cronly gave to McMurtry the following authority in writing: "John McMurtry is authorized to use, at discretion, the 'name of the firm of Cronly & McMurtry. Lexington, 10 June, '1854. Signed, EDWARD CRONLY." Held, that this instrument conferred authority upon McMurtry to sign the name of Cronly & McMurtry to obligations not connected with the business of the firm, during the partnership, but after the dissolution of the partnership it conferred no authority to sign the firm name to any paper whatever.

[The facts of the case are stated by the court in the opinion.—REP.]

*James Harlan and Tho. A. Marshall* for appellant—

Argued—1st. The power conferred by the writing relied on as giving authority to use the name of Cronly and McMurtry is evidently limited to the duration of the partnership of Cronly and McMurtry; when the partnership ceased the power ceased to use the partnership name. At the time the power was given there existed such a firm; when the name of Cronly and McMurtry was signed to the bill of exchange sued on the firm had been dissolved, and with that dissolution the power to sign the firm named by McMurtry also ceased.

There is nothing incongruous in continuing the power of one partner to use the name of the firm after dissolution, for the purpose of setling its affairs; but this power the law does not imply so far as to authorize the execution of new securities, even for preexisting debts, and such power must be specially conferred.

The fact that Cronly authorized McMurtry to use his name in connection with his own shows that it was to be used in no other way, and to be limited to the duration of the partnership, as conclusive as if

the words "during the existence of the partnership" had been added.

As between Cronly and McMurtry, the dissolution of the firm was a revocation of the power given to sign the firm name, and as to all others notice of the dissolution of the firm was notice of the cessation of the power, even to such as had known of the existence of the power, and confided in it.

In this case the bank had knowledge of the power, and of the fact on which the existence of the power depended, when the bill now in suit in this case was purchased, and consequently can claim no benefit from the unauthorized use of Cronly's name by McMurtry.

The proof shows that the cashier and one of the directors of the bank had notice of the dissolution of the firm of Cronly and McMurtry in the fall of 1854, and the bill is dated in June, 1855. This was notice to the bank. (See *Angel & Ames on Corporation, sec.* 308.)

*Tho. N. Lindsey,* for appellee—

The defense of appellant is, that before the bill sued on was purchased by the bank that the bank officers had notice that the partnership between him and McMurtry had been dissolved, and that McMurtry had no authority to sign the name of Cronly and McMurtry to the bill, and that McMurtry had undertaken to pay all the debts of the firm, and that the public had notice of the dissolution before the bill was purchased by the bank.

The proof conduced to show that the bill sued on was given to take up a bill for $2,500, drawn by McMurtry, endorsed, by Tho. S. Page, and accepted by Cronly and McMurtry, and dated 14 Oct., 1854, and which was sold to the bank by Cronly about the time it bore date.

There was no legal notice of the dissolution to the bank before the purchase of the bill sued on.

Notice of the dissolution of a partnership, published in a Gazette, is not of itself sufficient to exempt a retiring partner; such notice is of little effect unless it be shown that the party entitled to notice was in the habit of reading the Gazette. (*Gow on Part.* 249.) "An express notice, to be available, must be given to ' every person entitled to it—a communication to one ' may be rendered nugatory by his omission to com- ' municate it to another." (*Ib.* 248.) Notice should have been given to the bank in this case, in writing, addressed to the president and directors.

The authority given by Cronly to McMurtry, under date of 10th June, 1854, which was read in evidence, is very comprehensive, authorizing him *to use the* firm name at his discretion—not on firm paper, or in firm business, but as far outside of it as he in his discretion might think proper. This power was not revoked by the articles of dissolution, by which McMurtry is to settle up the business of the firm.

The partnership gave McMurtry no authority to use the firm name outside of the business of the firm; the power authorized its use by McMurtry in his private business. The dissolution did not revoke that power because it had not been created by the formation of the partnership. The revocation of the power could not have dissolved the partnership, nor did the dissolution of the partnership revoke the power.

There is no ground of surprise made out for a new trial. (1 *Marshall*, 152; 4 *Bibb*, 563; 2 *Marsh.* 349; 1 *Litt.* 38; 13 *B. Mon.* 325.)

*Geo. B. Kinkead,* on the same side—

Cronly and McMurtry being partners on the 10th June, 1854, McMurtry had authority to sign the firm name to all writings necessary to be made in regard to the business of the firm; and for such purposes there was no necessity for the execution of such a power. It conferred no power in respect to the partnership business which had not been almost daily

<div style="margin-left: left">CRONLY<br>
*vs.*<br>
BANK OF KY.</div>

used since the partnership existed. And the bill sued on was given to renew one that had been given to take up a note made by Cronly and McMurtry, and signed Cronly and McMurtry, and sold to the bank by Cronly himself.

The power was evidently given to authorize McMurtry to do what he had no authority to do as partner, and it will not be contended, that by that power McMurtry had not authority to bind Cronly in debts or obligations that had no connection with the business of the firm.

The dissolution of the firm of Cronly and McMurtry had no effect or operation on the power; it did not depend on the existence of the firm for its force and effect; it was an act of the party, which continued in force until revoked, and not dependant on the existence of the partnership.

A dissolution of a partnership will not exempt a member of a firm from responsibility. It must be a dissolution with notice; but a dissolution had no effect on the power in question.

The other grounds relied on for a new trial are insufficient. That the judge put a different construction upon a writing from the party, never has been considered such surprise as to authorize a new trial.

Oct. 11, 1857.

Judge SIMPSON delivered the opinion of the court.

The only question in this case is, whether the following instrument of writing, executed by Cronly when he and McMurtry were in partnership, authorized the latter, after the partnership was dissolved, still to use the name of the firm, or whether the authority it conferred terminated, when the firm was dissolved. The writing referred to is as follows:

"John McMurtry is authorized to use, at discretion, ' the name of the firm of Cronly and McMurtry.

<div style="text-align: right">EDWARD CRONLY.</div>

Lexington, June 10th, 1854."

The firm of Cronly and McMurtry was dissolved in October, 1854, and the bill of exchange on which this action was brought, was made by McMurtry, in the name of Cronly and McMurtry, in October, 1855.

By virtue of the partnership, one partner is constituted an agent for another, as to all matters within the scope and objects of the partnership business in which they are engaged. This authority does not however extend beyond the scope of the ordinary business and transactions of the firm; and cannot be exercised by either partner in the management and for the benefit of his individual affairs. This limitation on the powers, which one partner derives from the relationship which exists between them, was removed by the execution of the foregoing instrument of writing, by which McMurtry was empowered, as partner, to use the name of the firm, not only in cases within the scope of its ordinary business, but also in all other cases at his discretion.

For what length of time was this authority to continue? As the power created by the partnership ceases when the partnership is dissolved, the enlargement of that power would seem necessarily to cease and determine at the same time. The power conferred by the writing under consideration is merely to use the name of the firm, and when the firm no longer exists the power cannot be properly exercised. An authority by a firm carries with it an implied limitation of its existence, its duration being necessarily confined to the continuance of the partnership by which it was created. There is in this respect no difference between this power, and one granted by the firm to a third person. The authority in both cases is to use the name of the firm, and when the firm is dissolved the power is as effectually revoked as it is by the death of a person who has created an agency for the transaction of any kind of business.

*Marginal note:*

CRONLY
vs.
BANK OF KY.

Cronly and McMurtry were partners in business; during the existence of the partnership Cronly gave to McMurtry the following authority in writing: "John McMurtry is authorized to use, at discretion, the name of the firm of Cronly & McMurtry. Lexington, 10 June, 1854.—Signed, EDW'D CRONLY." Held, that this instrument conferred authority upon McMurtry to sign the name of Cronly & McMurtry to obligations not connected with the

business of the firm, during the partnership, but after the dissolution of the partnership it conferred no authority to sign the firm name to any paper whatever.

When Cronly authorized his partner to use the name of the firm at his discretion, it cannot reasonably be presumed that he intended to empower him to use it any longer than the partnership continued. When the partnership was dissolved all power, either express or implied, in relation to its business, except so far as it was necessary to close the business of the concern, was thereby revoked. McMurtry, therefore, had no power to use it any longer for partnership purposes, and not having that power, why should he be permitted to use it for his own benefit? An authority to use the name of a firm after its dissolution, might no doubt be conferred either on a stranger, or on a member of the firm, but such an authority, if created during the existence of the firm, would have to be conferred in express terms, otherwise its duration would, by necessary implication, be limited to the continued existence of the firm.

The principle by which we are governed in the construction of this writing, has been frequently applied in analagous cases. Thus, where one firm of bankers took from another firm of bankers, namely A and B, a bond conditioned for the repayment of all sums of money, for which they, A and B, or either of them, should draw upon the obligees by means of bills, it was held that this bond did not extend to or embrace a bill drawn by B after the death of A, by which the partnership was dissolved. (*Simpson vs. Cooke*, 1 *Bing.* 452.)

The like doctrine has been applied to cases where a guarranty is given by a firm; in all cases of this sort, the uniform rule of construction is, that the guarranty does not apply after the firm is dissolved, or any change of the members of the partnership has been made. Of course the application of this doctrine assumes that notice of the change of the members, or of the dissolution of the firm, is necessary. (*Story on Partnership*, section 251; *Collyer on Partnership*, page 368.)

The principle is, that an authority or guaranty by a firm is, from its very nature, limited in its duration by the existence of the firm; and when the latter is dissolved the former ceases to have any operation or effect. Here the authority was to use the name of the firm, and not the individual name of Cronly, and when the firm ceased to exist the authority could not be any longer properly exercised, and ceased to exist also.

Wherefore, the judgment is reversed, and cause remanded for a new trial in conformity with this opinion.